Winch v. Norman.

AFFIRMED.

## WINCH v. NORMAN.

1. **Evidence**: HANDWRITING: CLERK OF COURTS AS EXPERT. A witness does not show himself to be qualified to testify as an expert upon a comparison of handwriting, by stating merely that he is a clerk of the courts, without stating also how long he has served in such office.

2. ———: ———: STANDARD OF COMPARISON: HOW ESTABLISHED. Where it is sought to prove, by comparison with another writing as a standard, that a certain writing was executed by the same person who wrote the standard writing, the execution of the standard by such person must be established by direct evidence, and not by comparison with some other writing.

*Appeal from Harrison Circuit Court.*

THURSDAY, DECEMBER 4.

ACTION upon a promissory note. The defendant pleaded usury. In addition he pleaded a counter-claim for damages alleged to have been sustained by the publication of a libel. The jury found the note to be usurious in part. They also found that the defendant was entitled to damages upon his counter-claim, and rendered a verdict for the defendant for $207.34. Judgment having been rendered upon the verdict, the plaintiff appeals.

*J. W. Barnhart*, for appellant.

*S. H. Cochran*, for appellee.

ADAMS, J.—The libel set up in the defendant's counter-claim is alleged to have consisted in a publication made by sending through the mail, to one Louisa Vandusen, a postal card in these words: "My friends tell me you put your name to a security bond for your neighbor. I should think that you had enough of that business through life. He don't own or hold a cent in his name. Take your name off, sure. [Signed] F. F."

There was no direct evidence that the plaintiff wrote the postal card, but witnesses who were familiar with the plaintiff's signature testified in substance that they thought that there was some resemblance between the plaintiff's writing and a part of the writing on the postal card; and others testified as experts to a resemblance between what was admitted to be the plaintiff's writing and a part of the writing on the postal card. Among the witnesses examined in relation to the handwriting was one Hyde. He testified that he was familiar with the signature of the plaintiff, but not with his general handwriting, and that he thought that there was a resemblance between one letter on the postal card and the plaintiff's writing. He was also examined as an expert for the purpose of comparing certain admitted writing of the plaintiff with another postal card addressed to one Topping, and signed "J. W.," and was allowed to testify, against the objection of the plaintiff, that

he saw a resemblance between one letter in the Topping card and the plaintiff's admitted writing. The Topping card was then admitted in evidence to the jury, against the plaintiff's objection, for the purpose of enabling them to make a comparison between it and the alleged libelous card addressed to Louisa Vandusen.

The plaintiff contends that Hyde did not show himself to be qualified to testify as an expert from a comparison of plaintiff's admitted writing with the Topping card; and, even if he had been qualified, that it was error to allow the Topping card to be admitted in evidence for the purpose of a comparison to be made by the jury. Upon the question as to whether Hyde showed himself qualified to testify as an expert, we have to say that we find no evidence, except the witness' statement that he was the clerk of the courts of Harrison county. Without determining whether a person might not become qualified to testify as an expert from a comparison of writings by service in such office, it seems clear to us that he could not be so regarded without any reference to the length of time of such service. But upon this point the evidence discloses nothing. Such being the fact, we cannot say that there was any evidence whatever that Hyde was qualified to testify as an expert.

*1. EVIDENCE: handwriting: clerk of court as expert.*

We have to say, also, that we think that, independently of the question of the expert character of Hyde, the court erred in admitting the evidence respecting the Topping card, and erred in allowing it to go to the jury. The object, of course, was to establish the Topping card as in the plaintiff's handwriting, and then ask the jury to infer by comparison that the Vandusen card in question was in his handwriting also. But we have seen no case where it has been held admissible to make a given writing the basis of comparison, where its own genuineness is shown only by comparison with some other writing. It appears to us that the genuineness of the writing made the basis of com-

*2. ——: ——: standard of comparison: how established.*

parison, called sometimes the standard writing, should be proved by direct or positive evidence. In *Hyde v. Woolfolk*, 1 Iowa, 162, the court said: "Two obvious methods of proving the standard writing are—*First*, by the testimony of a witness who saw the person write it; and, *Secondly*, by the party's admission, when not offered by himself. We do not mean to say that these are the only methods, but only that the proof must be positive." The court also said: "The very idea of proving handwriting by comparison implies, of necessity, the establishment of the genuineness of the standard. The court is not prepared to adopt the suggestion that the standard writing may be proved by witnesses who have only seen the party write, for this is in effect fixing the standard by comparison; it is supporting a probability by a probability." The foregoing, though perhaps not strictly necessary to be said in that case, meets our approval. If it were allowable to establish the genuineness of the writing on the Topping card, to be used as a standard writing, by mere expert evidence based upon comparison, it would be allowable to establish still a third writing as a standard writing by comparison with the Topping card, and a fourth by comparison with the third, and so on indefinitely, and all might then be given to the jury as genuine writings with which to make a comparison of the disputed writing.

Evidence of experts based upon comparison is, at best, not very reliable, and we do not think that we should be justified in holding that writing can be used as standard writing, the evidence of whose genuineness rests only in opinion. Some other questions are presented, arising upon the evidence, but, as the evidence may be different upon another trial, we do not feel called upon to determine them.

We think that the judgment of the circuit court must be

REVERSED.